Mr. Chernoff, when you're ready. If you don't trip over the... Good morning again, may it please the Court, my name is Mike Chernoff and I represent the appellants in this manner, the minor N.O. and her mother Christine Horwig. We're here to ask for a new trial and we believe that we have convincingly set forth in the briefs we have three completely independent bases to seek a new and fair trial. I would suggest that two of those issues are relatively simple, one involving a sleeping juror and one involving a failure to completely disclose any causation opinions whatsoever from one of the expert witnesses of the defense and I'll return to those a little bit later. What I really would like to discuss is the interesting issue and it's the first and longest issue in the brief and the reason is that although any one of these bases is sufficient to send us back for a new trial, if the Court does not rule in our favor on this key first issue, it might make a new trial something of a hollow victory. Just a brief factual recitation, Mrs. Horwig had her water break early. She was hospitalized and she spent two weeks there under observation. All the experts agree the longer you can keep the fetus in, the better to avoid all sorts of problems associated with prematurity. But you must monitor for infection and that was done here. Dr. Olembek diagnosed chorioamnitis, you see it throughout the transcript just discussed as chorio, five times in the record, three or four times in his own handwriting. We allege, having diagnosed that condition at 2.30 on October 13th of 2011, the standard of care required the doctor to prescribe not just antibiotic to cover gram-positive bacteria but gram-negative. He didn't do it. It is a mistake. It is a medical error. We designated timely expert witnesses who are going to testify, it is a breach of the standard of care to not prescribe that second antibiotic and it directly led to these devastating results to this girl who is now five years old. The defendant's argument was that he did not make that diagnosis. That's correct, Your Honor. I believe on page 24 of the Apolese brief, they perhaps unfortunately refer to that as alternative facts. Dr. Olembek is entitled to get on the stand and look the jury in the eye and say, I didn't really mean it when I diagnosed chorio five times. But that's not, as I understand it, exactly what was said. It was said that he indicated that, as I recall, that it was possible, let's see, his argument is that he didn't diagnose with chorio but only noted the possibility of that condition, that there was no express diagnosis. What the doctor charted one time. Yes, I do understand. I'm only presenting you with his explanation for that. His, correct. His explanation factually is I hadn't actually diagnosed the condition at two-thirty. I just thought it was very likely at that point. I hadn't reached. It's a disputed issue of fact then. Absolutely. Isn't that correct? And it's a factual issue and he's entitled to take the stand and give that explanation, however inconsistent it might appear with the record. He's entitled to factually give that testimony and it's a credibility issue for our jury. The error comes when the defense was allowed to present standard of care testimony for diagnosis, which was not an issue in the case, it was not challenged in this case, and it could not have... Well, if he didn't make the diagnosis, wouldn't it be relevant to that to show under what standard of care it would be expected to make that diagnosis? I'm going to try to answer this as directly as I can. If the jury made a factual determination that they believed the doctor defendant and had not actually diagnosed Corio two-thirty in the afternoon, we would not prevail at trial. Our expert testimony is based upon the fact that the Corio is diagnosed timely. He did the right job. It was confirmed. Aren't you assuming the legal conclusion without having to prove it? Why wouldn't the physician, if his defense is, look, I did not make this diagnosis, why wouldn't it be a relevant part of their case-in-chief to put on evidence that, well, the reason this wasn't diagnosed is because it's not standard medical practice in these circumstances to do it? Wouldn't that be a relevant factor for the jury to consider in determining that issue? Respectfully, absolutely not, and here's why. Let's go back to first principles. This is a medical malpractice case. Medical malpractice is a species of negligence. We have duty, breach of duty, causation, and damages. In Virginia, under code 801-581-20, you must allege instead of duty and breach of duty, standard of care and breach of standard of care, and the code requires qualified expert witnesses to tell the jury what the particular standard of care was for the procedure at issue, how the healthcare provider breached that standard. That is required testimony, and that's what is somewhat misleading from the defense. The defense says, oh, well, you always can have an expert to explain things to the jury. You always have an expert to explain medicine, jargon, and in some cases, they're optional. In medical malpractice cases, they are required, but they're required for the procedure at issue. In this case, we said that the record factually demonstrates, we think beyond reproach, but obviously, the doctor wanted to testify to the contrary. The record shows a date and time of the diagnosis. Once that is true, the jury accepts that. You're proffering that as evidence to the trier of fact. Correct. But it seems like your argument assumes that once you've made the proffer, that you're entitled to control whatever relevant evidence the defendant is going to put on with respect to that issue. I disagree, Your Honor. I'm trying to be very clear. I'm trying to draw a line because, and maybe this wasn't as clear as I'd like it to have been in the brief. Both sides are always entitled to put on expert testimony to assist the trier of fact. To understand the evidence, contextualize the evidence. However, this is a fact question. Did Dr. Olympic diagnose this pregnant lady with choreo at this date and time? Either he did or he didn't. In the brief, we said the light was red or the light was green. Whether or not he was required by a standard of care of diagnosis to actually make that call at 2.30 in the afternoon that day doesn't matter because he did. In other words, it doesn't matter. It does not matter whether or not the standard of care for diagnosis requires that. That is an opinion that has nothing to do with what we've alleged, which is a failure in treatment. I'm not understanding where you're drawing the line and what allows you to draw the line in the way in which you have. Particularly given that these facts went to a jury. That's usually what we have is the question of whether or not proof was sufficient to get to a jury. But this is a case in which the facts went to the jury. So that's why I'm just not understanding why you get to determine the way in which the jury parses. If they're required to follow your analytical construct in how you see the case. And it just seems to me that they aren't. So that's why I'm having problems. I'll try a different way. The opinion testimony of the expert witnesses of the defense that Dr. Lembeck did not breach the standard of care by not diagnosing Corio at 2.30 in the afternoon. That's opinion testimony that does not go to any contested issue. In other words, whether or not it was proper for Dr. Lembeck to have actually diagnosed at 2.30 in the afternoon or not is completely immaterial to what the jury has to decide, which is whether or not. Wouldn't it go to the issue, though, that the jury would have to decide whether it was more likely than not that he actually made the diagnosis? No. And the reason is, and I don't even want to concede that much, but let me put it this way. They're trying to answer their own standard of care question. They're trying to say, well, we don't want to answer the question, did he breach a standard of care in treating the patient or not? They say, well, we want to answer this question. Was it proper for him not to have diagnosed, which is contrary to the record, was it proper for the doctor to not have diagnosed at 2.30 in the afternoon? And my submission is that that is completely irrelevant, immaterial, whether it was or was not required by a standard of care of diagnosis that we are not challenging. Well, you allowed the case to go to the jury on a very general verdict form. The only thing the jury was asked with regard to the standard of care was, did the plaintiffs prove by a preponderance of the evidence that the defendants were negligent by failing to meet the standard of care in the care and treatment of plaintiffs? So it wasn't any particular iteration of the standard of care, as you seem to be arguing now and in your brief, but just a very general question that the jury was asked. So how does that very general directive to the jury, very general question to the jury, comport with your analysis here? Well, respectfully, Your Honor, we had filed a motion limiting this on pages 44 to 50 of the record. We filed it pretrial. We argued it pretrial. And the court followed our analysis about three-quarters of the way and then said, no, I think it's okay. This is the language that we object to. Quote, experts can say that he was justified in not diagnosing that because that is the standard of care, not to diagnose it in those specific circumstances. So you're saying you objected to the verdict form in its particular question number one? I don't know if I could point out to the record if that was objected to beyond the fact we had a continuing objection the entire trial to introducing a second standard of care that we had not alleged. Right, but the verdict form, as I'm sure you well know as an attorney, is a very important thing that's going, because it's directing the jury to answer a particular question. It is. You've got to object to it if you've got an objection. I understand. And that's why I'm asking, is it in the record? The answer is I don't know that it was specifically or separately objected to beyond the fact that we had argued and lost the motion limiting and had renewed that argument throughout trial. You're right. That question is confusing because the question becomes, did the jury say he failed to meet the standard of care with respect to diagnosis or treatment? And you can't tell which question they're asking. And that's the fundamental heart of our argument is that there is absolutely no case authority or precedent anywhere where in a medical malpractice case where a defendant can say, I don't want to have to answer the standard of care that's been alleged to have been breached here. We're going to introduce a separate issue, a separate procedure. How can he defend in this case? This is what I'm having trouble with your presentation. How can the doctor have defended in this case if you're saying that he should have prescribed gentamicin and his position is gentamicin carries risks. You cannot prescribe it unless you've actually diagnosed choreo. And the record is in dispute as to whether he did diagnose choreo. So how can you limit the doctor's defense by saying he's got to defend why he didn't prescribe gentamicin when he's saying gentamicin is a risk. I can't do that unless I know the patient has choreo. I am not trying to unfairly prevent the defense or put it on the defense. So you're saying he could have, so you're saying he was, well, what was the standard of care then that he was required to defend against? He was required to defend whether or not he should or should not have prescribed the second antibiotic once the diagnosis is made. If he factually testifies, I didn't make the diagnosis, that's all there is to say about it. If the jury believes him, he wins. We are not putting on any evidence that the doctor made an error in the diagnosis. We are saying that if the jury believes the record where it's written five times that he diagnosed it, every expert agrees you have to give the second antibiotic. This is purely a treatment issue. They're trying to turn it into a diagnosis question. They don't get to pick whatever. There's a dozen things the doctor did that day, and we're not challenging most of them. What do we read from the jury verdict? Do we read that the jury found, as a matter of fact, that he did not diagnose choreo? The jury was hopelessly confused because they're already severely vulnerable and they only can respond to the expert testimony that's presented at trial. Well, I share their confusion. I know, I know. We have a jury verdict on a general verdict form, and I too wonder how we know what you assert, and that is that the doctor made the diagnosis of choreo. It doesn't appear to be reflected. It doesn't appear to be reflected factually. I'm going to go in just a little bit in my rebuttal time. It's hard to parse. I find it very hard to parse the jury's verdict in a way that gets me to the line of demarcation you're drawing. I understand, Your Honor, and again, to be clear, the reason that the question that was asked to the jury is confusing is because which of those two questions are they responding to? Did they breach the standard of care as to treatment, which is the lawsuit that we filed and that we designated and that we tried, and not some other standard of care, which must be some trial in some other courtroom because we didn't try that case. We did not allege that he didn't diagnose it timely or properly. But the problem that Judge Keenan has that I shared is the only response. You're trying to cabin the defendant's response because you want him to defend treatment, but he's saying the treatment is dependent on the existence of the diagnosis. It's not a separate question. It is a connected or linear question. Let me put it this way. We have not ever suggested or alleged or tried to prove that he breached any standard of care as to diagnosis. They cross the line. If you're looking for a line of demarcation, the defense crosses the line. When they have the opinion testimony, it was okay for him not to do it. He was presenting the defense that he had holistically as it was presented in the jury form that it would only have been permissible or the appropriate standard of care for me to treat Corio with gentamicin if I had diagnosed Corio in the first place. He viewed them as related questions, and I don't understand how you can say after the fact that they are not. Because he's entitled to a limited extent to educate the jury as to jargon and medical terms and give that factual context. It is impermissible to allow the defense to add a new opinion on a different procedure that we haven't challenged. They're saying that that was a breach. Thank you. You have some time reserved for rebuttal. Thank you. Mr. Schraub? Good morning, Your Honor. It's still morning. Good morning, Your Honors. May it please the Court. My name is Jonathan Schraub, and I represent the appellees. Your Honor, my friend and colleague makes what I respectfully think is a very strange argument. We would maintain that it is patently illogical to argue that the ORWGs could present both fact and expert testimony that a diagnosis has been made and medical malpractice occurred because treatment for that diagnosis was not done in a way that they maintain it should have been done. But somehow we are precluded from arguing that the diagnosis wasn't made, that there was no basis to make it, and that when you don't make that diagnosis, then you don't afford the treatment that the plaintiff is accusing us of malpractice for not affording. I simply have never been able to understand or articulate it, frankly, any more simply than that. We are not required to accept their version of the case. They maintain it is beyond peradventure. It is simply beyond human imagination that someone could decide that Dr. Alembic did not make this diagnosis. We disagree. We disagreed, and we presented to the jury straight up through fact and expert testimony how a diagnosis is made in a multi-page, hundreds of page medical record, where it's made, how it's made. Dr. Alembic explained why in one place he said probable and pending choreo. In other places he just used the shorthand choreo, it was not meant as a diagnosis. I assume, but the jury verdict doesn't enlighten us, but I assume that the jury found that no diagnosis had been made. That was a part of my question. I'm still not clear on what we are to infer from what the jury found when it's not, when it doesn't seem to be divisible. I don't think it is. I don't see how we can assume what they found. You can't assume what they found, Your Honor. All you can assume is what the verdict says, that there was no breach of the standard of care. And in the, I forget the exact words that Judge Keenan read from the verdict, there was no breach of standard of care in the care and treatment. That's what they found. It makes sense that they would have found that there was no diagnosis of choreo. But I suppose they could have found that there was a diagnosis of choreo, but you still didn't need to give gentamicin, which, by the way, we covered that ground. We covered every single ground you can cover in this case. We had experts say that there is no specific regimen that the standard of care requires. Even if you do diagnose it, you don't have to give a specific antibiotic like gentamicin. The plaintiff's problem in this case is that they went sort of blindly forward with their theory of the case, and they excluded every other possibility that the jury could find. They didn't have an expert to say that it was required to diagnose choreo or that it would be a deviation of the standard of care under these circumstances not to. We had experts to say that, that she didn't meet the clinical requirements for that diagnosis, and therefore you don't make that diagnosis, and that's perfectly appropriate. And if you don't make that diagnosis, then you don't give the antibiotic because the antibiotic has risks. What you do is you move promptly to deliver the baby to get it out of potential harm's way, and that's what Dr. Olembek did. So to me, their argument has always been bizarre. I mean, it's been very, very frustrating to try and say anything other than they cannot tell us how we defend this case. They can't tell us that. We decide how we defend this case. The court decides if it's relevant or not relevant, but we make a decision how we defend it, and that's what we did. The other two issues which are on appeal here are really no better for the plaintiff. The sleeping juror issue, which I'm sure my colleague will get to, I suppose, when he gets up again, there was no evidence other than the observation of one plaintiff's counsel that this juror was asleep for any period of time. The court didn't see it. Nobody could confirm it at all. The court then watched the juror extensively for the next couple of days, didn't see anything that happened that was untoward, and the court exercised its discretion and did not relieve the juror. The important point with respect to that is obviously the broad discretion a trial court has to, because he's there watching what's going on and watching the proceedings and has a handle and a sense of how the trial is going. But also the plaintiffs maintain that this juror slept through one portion of one plaintiff's trial. He was a plaintiff's expert, and that plaintiff's expert was never again mentioned in the course of this case. In other words, the testimony from that expert was undisputed. We didn't dispute it. That expert was there to say that after the baby is born, you can make a pathologic diagnosis of choreo. That's not available to the obstetrician before the baby is born. Well, there's no dispute that after the baby was born, there were pathological tests and the mother had choreo. That's not disputed. The question is what did the obstetrician know. So the fact that if a juror was going to fall asleep, he couldn't have picked a better time to do it, because there is simply no issue with regard to what the pathologist testified to in this case. It was never mentioned again in closing, and by any other expert, it was simply a nonissue in the case. The Court has obviously, we cited the case, has broad discretion to decide what to do about a juror who is asleep. And if it doesn't seem to cover a critical part of the testimony, then he certainly has the discretion to decide not to release that juror. I'd also mention that no objection was made. This issue wasn't raised while the event supposedly was occurring. And the Court mentioned its frustration at that. In other words, they didn't approach the bench and point out this juror seems to be snoozing. They waited until the end of the day and said sometime earlier in the day, I saw this. So what am I supposed to do? I didn't see it. No court personnel saw it. Nobody saw it. But he was very solicitous of the position, and he watched for a couple of days before he made his final decision. The third issue relates to what the plaintiffs call undisclosed proximate cause evidence by Dr. Norwitz. Dr. Norwitz's opinion that gentamicin would not have worked was in support of both his standard of care and proximate causation opinions. He had a disclosed standard of care opinion that you were not required to give any antibiotics specifically with respect to this. And he was allowed on trial to explain why he said that. They never took the deposition of any expert in this case, but the judge said it was an explanation of a disclosed opinion. Could we have disclosed it better? Mea culpa, we could have disclosed it. We could have disclosed it better. This Court's holding in Golden Nugget, and the Golden Nugget case said it really isn't an issue of whether it could have been disclosed better. And the Court said in Golden Nugget, you know, clearly the objecting party was surprised by the question. But that wasn't the issue. The issue was, were they surprised by the issue? And in this case, the issue of whether gentamicin had to be given was all throughout this case. And they were prepared, presumably, to address it specifically because our second expert, Dr. Dudley, gave the opinion. So there was no surprise. There was no, there really was nothing about this other than the fact that they took issue that we didn't say it as explicitly as we should. And so is your argument there it's merely cumulative? Yes, sir. As I say, when you get done, if the Court doesn't need to wade into this dispute about was it a good or wasn't it a good disclosure, because the fact of the matter is, it's cumulative. Dr. Dudley, who was clearly and undisputedly disclosed to give this testimony, gave it without any objection. So the exact testimony, or virtually exact, that came in through Dr. Norwitz on this question came in through Dr. Dudley. And therefore, it is cumulative, it is non-prejudicial, and the Court need not get into the question of whether or not it was error to admit it or error to admit it or not admit it. Those are the three issues. And we see no basis on any of these three to disturb a general jury verdict in favor of Dr. Alembic. Shouldn't Dr. Norwitz's report have included the opinion? Yes. You're admitting that? Yes. Dr. Norwitz's report was general. It was general, and were I to live to fight a second day, then I would do Dr. Norwitz's report differently. But I do maintain that under the relevant law, it provided sufficient notice for the opinion as a standard of care opinion, that no antibiotics specifically needed to be given, and then he's allowed to explain on the witness stand why he says that. And that's what he did. But the Court doesn't have to wade into it, because it's clearly cumulative evidence given by another doctor without objection, without objection to his designation and disclosure, Dr. Dudley, and therefore, it's the same. There's no prejudice to it. It can't possibly be the basis of a new trial. Certainly, the jury verdict form gives you no inclination that Dr. Norwitz was more persuasive than Dr. Dudley or anything like that. I agree you cannot parse the jury verdict form. But you're saying the jury didn't even reach the issue of proximate causation, aren't you? I believe they didn't, and once they found that there was no breach of the standard of care in a medical malpractice case, as the Court does, that's the end of it. You don't go any farther than that. Well, if the jury had reached the issue of proximate causation, it would have had to address the question, too, would it not? Yes. Yes. But the jury verdict form says if you don't find on question one, your job's done. And so the whole thing is irrelevant. The whole question is irrelevant. It's cumulative. They didn't have to reach it. It's not a basis for anything in this case. So none of these three issues are sufficient to disturb an extremely complex, detailed trial where everybody put on their experts and the case was then left to the jury. There are no questions from the Court on any issue. I'll yield my time. Thank you very much. Let me start where my colleague left off. First of all, I do hear a concession that there were no actual causation opinions set forth in Dr. Norvitz's expert report. There is an opening sentence that says I'm going to talk about standard of care issues, I'm going to talk about causation issues, and then there's five pages of standard of care opinions and no causation opinions that we would Does it make any difference in view of the other physician's testimony? Yes, because the cases that they rely upon argue that it would merely be cumulative, including this Court's authority, which is the United States v. Conn, which is from 2006. In that case, there were at least three or four other witnesses who were testifying in the same way. There was tons of other evidence besides the statement, and our independent review of the record confirms that the litigant's statements were duplicative of a wealth of other evidence and would not have made a difference. That's a very different fact pattern. Here, if the trial court would have properly excluded Dr. Norvitz, then you only would have had the very limited and isolated testimony of Dr. Dudley. Instead, we were surprised at trial, and you have corroboration of Dr. Dudley's testimony, and it destroys the ability of my colleague to properly cross-examine him. Did the verdict form, though, show that the jury reached the issue of causation? I agree with you that they did not. How do we factor that into our analysis? Well, I understand the question. I think that so long as this Court is willing to send us back for a new and fair trial under either of the other points, this needs to be addressed so it does not happen a second time. But you are correct that independently, to the extent they never reached that question, it would not independently serve as a basis. To answer your question, Judge Keenan, with respect to the sleeping juror, the decision was arbitrary and it was an abuse of discretion for two reasons. Number one, the issue was raised on the same day. There was a statement and representation both by trial counsel, my colleague Ms. Bertram, and by Christine Orwig, the adult plaintiff in this case, that they saw the juror sleeping. The trial judge made a finding that the juror was sleeping and for a non-trivial amount of time, but said he needed to take it under advisement. Even if he was sleeping, if the only evidence he missed was something that was uncontested, what difference does that make? Because it was still crucial evidence. The evidence was that our placental pathologist said that Dr. Lundbeck was correct at 2.30 in the afternoon that she did have choreo. You keep treating that as a given that it's a diagnosis, which isn't supported in the record. And there's no dispute as to whether or not the pathological examination after birth demonstrated choreo. Did Dr. Lundbeck dispute that? No, they conceded that she had choreo. The only thing they wouldn't concede was that he actually diagnosed it at 2.30 in the afternoon. I think that's Judge Agee's point. If they concede the testimony, what difference does it make? I understand the court's position on that. I think we're just asking questions. We're trying to understand why, if the juror whom the district court assumed arguendo was sleeping, wasn't entitled to take into consideration the fact that the testimony being done given at the time was not in dispute. Isn't that a reasonable part of the trial court's exercise of its discretion? Well, I would suggest, Your Honor, that discretion always wane between at least two factors. And here we had, by the end of trial, we still had two alternate jurors left. And so the prejudice of not striking or removing that juror is that that juror was not able to participate and discuss the slides and the demonstration of the pathological confirmation of choreo. Which wasn't disputed. I understand that, versus nothing. There is nothing on the other side of the scale, which is why it's arbitrary and an abuse of discretion. There was no harm to any of the parties in making, removing that juror, and you still had one alternate left. But surely that's not the standard for abuse of discretion. The standard for abuse of discretion is extremely deferential. It is, and there just has to be any sort of basis. But the only basis the court ever offered was something to the effect of, this is a gratuitous comment, but a juror who doesn't care enough to pay attention might not have much effect on the deliberations. I'm not quite sure what that means, but that certainly strikes the appellants as the perfect example of an arbitrary decision. It is not weighing an exercise in discretion between two competing points. The only point was the potential prejudice of important, illustrative, even if conceded evidence, versus nothing on the other side. My time is up. Thank you very much. We will ask the Courtroom Deputy to adjourn court for the day, and we will come down and greet counsel.
judges: Allyson K. Duncan, G. Steven Agee, Barbara Milano Keenan